# COURT OF APPEALS OF VIRGINIA

**Record No. 1673-25-4**

EASTERN POINT TRUST COMPANY, ET AL.
v.
PITT, MCGEHEE, PALMER, BONANNI & RIVERS, P.C.

Present: Judges O'Brien, Causey and Bernhard
Argued at Fairfax, Virginia

Opinion Issued August 11, 2026[*]

## FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
Robert J. Smith, Judge

T. Wayne Biggs (Skyler R. Peacock; Dycio & Biggs, on briefs), for appellants.

Karissa T. Kaseorg (L. Lee Byrd; Laura Maughan; Sands Anderson PC, on brief), for appellee.

## MEMORANDUM OPINION BY
## JUDGE MARY GRACE O'BRIEN

Eastern Point Trust Company and Eastern Point Services, Inc. (collectively, "Eastern Point") appeal an order overruling their demurrer to the complaint of Pitt, McGehee, Palmer, Bonanni & Rivers, P.C. ("Pitt McGehee"), a Michigan law firm seeking $1.6 million in damages arising from Eastern Point's alleged mismanagement of a client settlement fund. Eastern Point argues that a contractual exculpatory clause shielded it from liability and the court should have sustained its demurrer as to all claims. Pitt McGehee counters that the exculpatory clause was not enforceable under Code § 64.2-799 of Virginia's Uniform Trust Code ("VUTC") and the court properly allowed Pitt McGehee's complaint to proceed. For the following reasons, we affirm in part and reverse in part.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

In June 2022, Pitt McGehee, through a third party, retained Eastern Point to establish a qualified settlement fund (QSF) to hold and ultimately disburse settlement proceeds and attorney fees arising from the resolution of claims in a matter pending in bankruptcy court. *See In re USA Gymnastics*, No. 18-09108-RLM-11 (Bankr. S.D. Ind. Dec. 16, 2021).[2] A QSF is a mechanism authorized by the federal tax code and accompanying regulations to facilitate the resolution of claims in litigation. *See* 26 U.S.C. § 468B; 26 C.F.R. §§ 1.468B to 1.468B-9. A QSF enables the collection and management of settlement payments in a structured and tax-efficient manner. *See United States v. Brown*, 348 F.3d 1200, 1206-08 (10th Cir. 2003) (describing QSF criteria and tax implications).

Eastern Point's promotional materials emphasized its insurance coverage, its expertise as a "licensed fiduciary," its commitment to "asset safety," and its "assurance of continual oversight." But, according to allegations in the complaint, Eastern Point was "not a licensed fiduciary, did not maintain sufficient insurance to protect [Pitt McGehee] from the losses suffered, provided insufficient oversight of the QSF and distributions therefrom, and lacked the

---

[1] "We recite the factual allegations in this case as if they are true, because a demurrer admits the truth of all properly pleaded material facts." *Morgan v. Bd. of Supervisors*, 83 Va. App. 720, 726 n.2 (2025). "A demurrer, however, does not admit the correctness of the pleader's conclusions of law." *Id.* "Moreover, we consider, as the trial court did, not only the substantive allegations of the claim but also the documents stipulated by the parties to be part of the record subsequent to the motion craving oyer for the purposes of ruling on the demurrer." *Id.*; *see Flippo v. F&L Land Co.*, 241 Va. 15, 17 (1991).

[2] Pitt McGehee represented victims of sexual abuse perpetrated by Larry Nassar, a volunteer for USA Gymnastics (USAG). In 2018, USAG filed for bankruptcy after hundreds of victims sued USAG due to the abuse. In 2021, the bankruptcy court confirmed a reorganization plan that funded a QSF to compensate the victims. *See In re USA Gymnastics*, No. 18-09108-RLM-11 (Bankr. S.D. Ind. Dec. 16, 2021). As of July 2026, the bankruptcy matter remained open.

capabilities to safely and securely protect and preserve [Pitt McGehee's] monies entrusted to its care."

In July 2022, "an unknown third party began to send fraudulent emails to [Eastern Point] impersonating an employee of [Pitt McGehee] in an attempt to induce [Eastern Point] to make distributions from the QSF." Because Eastern Point "had no commercially reasonable security procedures in place to detect and prevent fraud, including multi-factor authentication, the fraudster's efforts went virtually unimpeded until [Pitt McGehee] discovered the fraud on or about August 16, 2022." Between July 28 and August 16, Eastern Point "wired millions of dollars from the QSF to bank accounts controlled by the third[-]party fraudster." A series of suspicious transactions "suggests that [Eastern Point] knew about or should have discovered the fraud before August 16, yet [Eastern Point] failed to inform [Pitt McGehee] of the suspected fraud in a timely manner or otherwise take immediate steps to preserve monies within the QSF."

Pitt McGehee sued Eastern Point in federal district court in Michigan. Eastern Point moved to dismiss on grounds of forum non conveniens, arguing that a forum selection clause in the parties' contract gave Fauquier County Circuit Court exclusive jurisdiction over the dispute. The forum selection clause appeared on Eastern Point's website in the "Terms of Use," which were expressly incorporated into the parties' trust agreement. The district court agreed with Eastern Point, finding that the "Terms of Use, including the forum selection clause, [were] reasonably communicated to Pitt McGehee[] and that Pitt McGehee expressly consented to and is bound by the Terms of Use." Accordingly, the district court dismissed Pitt McGehee's complaint without prejudice on grounds of forum non conveniens.

Pitt McGehee refiled its complaint in Fauquier County Circuit Court asserting claims for breach of fiduciary duty (Count I), negligence (Count II), gross negligence (Count III), declaratory judgment (Count IV), liability under Article 4A of Virginia's Uniform Commercial

Code ("UCC") (Count V), and liability pursuant to the VUTC (Count VI). In addition to claiming over $1.6 million in damages, Pitt McGehee requested an award of attorney fees.

Eastern Point demurred, relying on an exculpatory clause in the Terms of Use, which provided in relevant part as follows:

> To the fullest extent provided by law, in no event will [Eastern Point] . . . be liable for damages of any kind, under any legal theory, arising out of or in connection with [Pitt McGehee's] use or inability to use the platform . . . or any associated fiduciary or trust administration services including any direct, indirect, special, incidental, consequential, or punitive damages, including but not limited to . . . loss of revenue, loss of profits, loss of business or anticipated savings, loss of use, loss of goodwill, loss of data, and whether caused by tort (including negligence), breach of contract, or otherwise, even if foreseeable. Notwithstanding the foregoing, in no case shall any resulting liability be greater than the trustee fees assessed and collected within the preceding twelve (12) month period.

The provision also waived liability for all indirect, consequential, and punitive damages arising from Eastern Point's "trust administration and trustee services, or related services provided by [Eastern Point]." On demurrer, Eastern Point argued that this clause "serves to foreclose all of [Pitt McGehee's] claims."

By consent order resolving a motion craving oyer filed by Eastern Point, the court deemed multiple documents as being attached to the complaint. These documents included the Michigan district court order, the Terms of Use, and the trust agreement.

After a hearing, the court sustained Eastern Point's demurrer to Pitt McGehee's count for a declaratory judgment and request for attorney fees but overruled the demurrer as to all remaining counts, allowing Pitt McGehee to pursue its claims for breach of fiduciary duty, negligence, gross negligence, liability under Article 4A of Virginia's UCC, and liability pursuant to the VUTC.

- 4 -

This Court granted an interlocutory appeal as authorized by Code § 8.01-675.5(A). Although Eastern Point raised numerous issues in its demurrer, it only seeks appellate review of the circuit court's purported "disregard of the exculpatory language in the Terms of Use, which should have operated as a complete bar to Pitt McGehee's claims."

ANALYSIS

I. Standard of Review

"[Appellate courts] review a circuit court's decision to sustain or overrule a demurrer de novo." *Brooks-Buck v. Wahlstrom*, 304 Va. 470, 477 (2025). "A demurrer tests the legal sufficiency of the facts alleged in a complaint assuming that all facts alleged therein and all inferences fairly drawn from those facts are true." *Id.* (quoting *Givago Growth, LLC v. iTech AG, LLC*, 300 Va. 260, 264 (2021)). Further, after granting a motion craving oyer, "a court considering a demurrer may ignore a party's factual allegations contradicted by the terms of authentic, unambiguous documents that properly are a part of the pleadings." *Ward's Equip., Inc. v. New Holland N. Am., Inc.*, 254 Va. 379, 382 (1997); *see Fun v. Va. Mil. Inst.*, 245 Va. 249, 253 (1993).

II. Whether Contract or Trust Law Applies

Eastern Point argues that Virginia law protects the right of contracting parties to exempt or limit liability, provided that the exemption or limitation does not contravene public policy, and the court violated this right by not enforcing the exculpatory clause to dismiss the suit. Pitt McGehee counters that the court did not err because Virginia trust law prohibits exculpatory clauses for claims of bad faith and reckless indifference. According to Pitt McGehee, because the complaint sufficiently alleged such egregious conduct, the exculpatory clause did not shield Eastern Point from liability.

Our threshold inquiry, therefore, is whether Virginia's trust law limits the enforceability of the exculpatory clause. Eastern Point contends the Michigan district court already decided that contract law exclusively applies, having found that the forum selection clause in the Terms of Use was binding and enforceable. We disagree. By ruling that the Terms of Use were binding for purposes of the forum selection clause, the district court did not by extension determine that all provisions in the Terms of Use were likewise binding and enforceable. The doctrine of issue preclusion only bars re-litigation of "an issue of fact or law actually litigated." *Lee v. Spoden*, 290 Va. 235, 246 (2015) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)). The Michigan district court never ruled on the enforceability of the exculpatory clause under Virginia law, the existence of any fiduciary duties independent of the Terms of Use, or the sufficiency of allegations in the complaint. In fact, the Michigan district court acknowledged that these issues remained open and that Eastern Point was "only seeking to have this action brought in the appropriate forum - not to prevent the claims from being brought at all."

Therefore, although the Michigan district court found that the parties have a contractual relationship, it did not determine that their relationship is purely contractual. And the fact that the parties have a contractual relationship under the Terms of Use does not negate the existence of a fiduciary relationship with respect to the QSF. The Supreme Court of Virginia has held that fiduciary duties may exist independently of a contract if they are imposed by common law or statute. *See Crosby v. ALG Tr., LLC*, 296 Va. 561, 570-72 (2018) (holding that a trustee under a deed of trust was a fiduciary for both the debtor and creditor and owed common-law fiduciary duties that were not displaced or abrogated by the contractual terms of the deed of trust or by statute). The Michigan district court order does not preclude the existence of a trust and a fiduciary relationship between the parties.

A trust is a

> fiduciary relationship with respect to property, arising from a manifestation of intention to create that relationship and subjecting the person who holds title to the property to duties to deal with it for the benefit of charity or for one or more persons, at least one of whom is not the sole trustee.

Restatement (Third) of Trusts § 2. The VUTC provides that a trust is created if (1) "[t]he settlor has capacity to create a trust;" (2) "[t]he settlor . . . indicates an intention to create the trust;"(3) "[t]he trust has a definite beneficiary;" (4) "[t]he trustee has duties to perform;" and (5) "[t]he same person is not the sole trustee and sole beneficiary." Code § 64.2-720; *see also Boyle v. Anderson*, 301 Va. 52, 56-59 (2022) (distinguishing trusts from contracts). A trust settlor can also be a trust beneficiary. *Gelber v. Glock*, 293 Va. 497, 506 (2017).

The complaint sufficiently alleged the creation of a trust and the appointment of Eastern Point as a trustee owing fiduciary duties to definite beneficiaries, Pitt McGehee and its clients. Specifically, the complaint alleged that Pitt McGehee was both a "settlor and beneficiary of the QSF" and retained Eastern Point to "establish and administer the QSF for the purpose of receiving, holding, and ultimately distributing settlement proceeds and attorney fees arising from the resolution of claims" in the underlying bankruptcy matter. Accordingly, Eastern Point "created a QSF trust for [Pitt McGehee]" that was "funded with client settlements and [Pitt McGehee's] attorney fees." The relationship between the parties was alleged to be "fiduciary in nature, as [Eastern Point] was a trustee holding monies owned by [Pitt McGehee] and its clients in trust."

Eastern Point, however, claims that a QSF established pursuant to federal tax law is a separate legal entity and therefore not a "trust" as Virginia law defines it. For this proposition, Eastern Point relies on *Jimenez v. Corr*, 288 Va. 395 (2014), which states that a trust is not a "separate legal entity" but, rather, a "'fiduciary relationship with respect to property.'" *Id.* at 410

(quoting Restatement (Second) of Trusts § 2). Eastern Point misunderstands the principle articulated in *Jimenez*: the fact that a trust is not a separate legal entity does not imply that property held by a separate legal entity cannot constitute the corpus of a trust. *Jimenez* does not prevent parties from using a separate legal entity to create a trust relationship. The relevant question is whether Eastern Point held or controlled identifiable property subject to fiduciary duties for the benefit of Pitt McGehee and its clients. Considering the allegations set forth above, we find that the complaint sufficiently alleged these facts.

We note that a QSF is not categorically subject to state trust law, just that it can be established as one as alleged in Pitt McGehee's complaint. Under federal tax regulations, a QSF is broadly defined as a "fund, account, or trust." 26 C.F.R. § 1.468B-1(c). Whether a QSF is subject to state trust law depends on how the fund is structured and whether it is organized as a trust under applicable state law. *See* 26 C.F.R. § 1.468B-1(c)(3) (providing that a QSF must either be "a trust under applicable state law, or its assets are otherwise segregated from other assets of the transferor").

Here, because the complaint sufficiently alleged that the parties were in a fiduciary relationship with respect to the settlement proceeds held in the QSF, we turn to whether the exculpatory clause would be enforceable under Virginia trust law.

III. Enforceability of the Exculpatory Clause under Virginia Trust Law

The VUTC limits the enforceability of trustee exculpatory clauses. Specifically, Code § 64.2-799(A)(1) of the VUTC provides as follows:

> A term of a trust relieving a trustee of liability for breach of trust is unenforceable to the extent that it[] . . . [r]elieves the trustee of liability for breach of trust committed in bad faith or with reckless indifference to the purposes of the trust or the interests of the beneficiaries.

This Code section thus prevents a trustee from immunizing itself against liability for breach of trust committed in bad faith or with reckless indifference. The statute parallels the common law, as reflected in both the Second and Third Restatement of Trusts. *See* Restatement (Second) of Trusts § 222(2) (stating that "[a] provision in the trust instrument is not effective to relieve the trustee of liability for breach of trust committed in bad faith or intentionally or with reckless indifference to the interest of the beneficiary"); Restatement (Third) of Trusts § 96(1)(a) (similarly stating that a trust term is unenforceable if it "purports to relieve the trustee . . . of liability for a breach of trust committed in bad faith or with indifference to the fiduciary duties of the trustee, the terms or purposes of the trust, or the interests of the beneficiaries").

Comments to the Third Restatement emphasize a public-policy rationale for limiting trustee exculpatory clauses.

> [T]otal exoneration of [a trustee] . . . must be contrary to public policy. Not only is a trustee a fiduciary, . . . but the essence of a trust is a beneficiary's right of recourse against the trustee for improper administration, and if the beneficiary is altogether denied that recourse it is highly questionable whether the settlor has created a trust at all.

Restatement (Third) of Trusts § 96, Reporter's Note to cmt. b & c (fourth alteration added) (quoting Donovan W.M. Waters, Mark R. Gillen & Lionel D. Smith, *Waters' Law of Trusts in Canada* 927 (3d ed. 2005)). A settlor "who attempts to create a trust without any accountability in the trustee is contradicting himself. A trust necessarily grants rights to the beneficiary that are enforceable in equity. . . . [I]f the settlor really intended to create a trust, it would seem that accountability . . . must inevitably follow." *Id.* (alterations in original) (quoting George G. Bogert & George T. Bogert, *The Law of Trusts and Trustees*, § 673 (rev. 2d ed. 1993)).

Eastern Point argues that (a) the VUTC does not apply to the type of trust created here; but even if the VUTC did apply, the complaint (b) does not allege a "breach of trust" and (c)

- 9 -

does not allege any "bad faith" or "reckless indifference" by Eastern Point. We consider each argument in turn.

### a. Whether the VUTC Exempts the QSF

Eastern Point emphasizes that the VUTC provides, "This chapter shall not apply to . . . trusts created for paying debts . . . ." Code § 64.2-700(A)(1). According to Eastern Point, because the QSF was established to hold and disburse settlement proceeds from a debtor's bankruptcy case, it was a trust created to pay debts and therefore exempt from the VUTC.

Code § 64.2-700(B), however, authorizes courts to apply the VUTC where appropriate, regardless of exclusions in subsection (A):

> Notwithstanding subsection A, a court, in exercising jurisdiction over the supervision or administration of trusts, may determine that application of the policies, procedures, or rules of the Code is appropriate to resolution of particular issues

Code § 64.2-700(B). Under this provision, whether to apply the VUTC to the QSF is a determination committed to the circuit court's discretion and cannot be resolved against Pitt McGehee on demurrer. Therefore, Eastern Point's asserted exemption does not bar Pitt McGehee's claims as a matter of law. Additionally, even assuming the QSF was exempt from the VUTC, the rule is the same under the common law of trusts: trustees cannot exculpate themselves against claims for breach of trust committed in bad faith or with reckless indifference. *See* Restatement (Second) of Trusts § 222(2); Restatement (Third) of Trusts § 96(1)(a).

### b. Whether the Complaint Sufficiently Alleged "Breaches of Trust"

Code § 64.2-799(A)(1) prevents a trustee from immunizing itself from liability for certain "breaches of trust." Eastern Point claims that, even assuming the VUTC applies to the QSF at

issue, Code § 64.2-799(A)(1) does not apply where Pitt McGehee fails to allege any "breach of trust."

A "breach of trust" is as any "failure by the trustee to comply with any duty that the trustee owes, as trustee, to the beneficiaries, or to further the charitable purpose, of the trust." Restatement (Third) of Trusts § 93. "Breach of trust" is an umbrella term for any "violation by a trustee of a fiduciary duty—that is, any duty the trustee owes *as trustee*—to the trust beneficiaries." *Id.* § 93 cmt. b. "A breach of trust occurs if the trustee, intentionally or negligently, fails to do what the fiduciary duties of the particular trusteeship require or does what those duties forbid, or if the trustee fails in performing a permissible act to conform to applicable fiduciary standards." *Id.*

Pitt McGehee's count for liability under Article 4A of Virginia's UCC (Count V) is not a claim for breach of trust. Instead, it alleges that Eastern Point violated a statutory duty to reimburse Pitt McGehee, as its customer, for unauthorized transfers of funds. *See* Code § 8.4A-204(a) (requiring banks to refund customers for certain unauthorized transfers); Code § 8.4A-105(a)(2) (defining "[b]ank" to include "trust company"); Code § 8.4A-105(a)(3) (defining "[c]ustomer" to include an entity "from whom a bank has agreed to receive payment orders"). Because Count V implicates a UCC duty owed to a customer, rather than a fiduciary duty owed to a trust beneficiary, it does not allege a breach of trust. Therefore, Code § 64.2-799 did not prevent Eastern Point from exculpating itself from Count V.

Even so, the exculpatory clause cannot foreclose Count V. Article 4A does not permit a bank to relieve itself by agreement of its statutory obligation to refund an unauthorized transfer. *See* Code § 8.4A-204(b) (providing that the "obligation of a receiving bank to refund payment . . . may not otherwise be varied by agreement"). Accepting as true Pitt McGehee's allegations that Eastern Point made unauthorized transfers of funds under Code § 8.4A-204(a),

- 11 -

the exculpatory clause could not as a matter of law relieve Eastern Point of its statutory refund

obligation. *See id.* Whether all conditions for the statutory refund have been satisfied turns on

facts that cannot be resolved against Pitt McGehee on demurrer. Therefore, the court did not err

in overruling the demurrer as to Count V.[3]

> ### c. Whether the Complaint Sufficiently Alleged Bad Faith or Reckless Indifference

Code § 64.2-799(A)(1) provides that exculpatory clauses are unenforceable to relieve

trustees of liability for breaches of trust "committed in bad faith or with reckless indifference to

the purposes of the trust." Eastern Point argues that because the complaint lacks sufficient

allegations of bad faith or reckless indifference, the exculpatory clause is enforceable and

precludes all claims.

Bad faith "in the civil context . . . connotes the 'conscious doing of a wrong,'" *Logan v.

Commonwealth*, 279 Va. 288, 293 n.3 (2010) (quoting *Black's Law Dictionary* 139 (6th ed.

1990)), and implies fraudulent or dishonest action, *Rafalko v. Georgiadis*, 290 Va. 384, 396-97

(2015). Reckless indifference is synonymous with "[w]illful and wanton negligence," which

consists of "action taken in conscious disregard of another's rights, or with reckless indifference

to consequences that the defendant is aware, from his knowledge of existing circumstances and

conditions, would probably result from his conduct and cause injury to another." *Kaltman v. All

Am. Pest Control, Inc.*, 281 Va. 483, 494 (2011) (quoting *Alfonso v. Robinson*, 257 Va. 540, 545

---

[3] In overruling the demurrer as to Count V, the court relied on the sufficiency of allegations in the complaint that Eastern Point was a "bank" and that the fraudsters' distribution requests were "payment orders" under Code § 8.4A-204(a). But under the right-result-different-reason principle, this Court can uphold a correct circuit court decision on an alternative ground "as long as the record contains sufficient information to support the proper reason." *Tessema v. Moulthrop*, 86 Va. App. 24, 34 (2025) (quoting *Haynes v. Haggerty*, 291 Va. 301, 305 (2016)). Here, considering allegations in the complaint and the text of Code § 8.4A-204(b), the record contains sufficient information to conclude that the exculpatory clause could not, as a matter of law, foreclose Eastern Point's liability under Count V.

(1999)).  The degree of a party's culpability is "generally a factual matter for resolution by the jury and becomes a question of law only when reasonable people cannot differ."  *Koffman v. Garnett*, 265 Va. 12, 15 (2003).

We agree with Eastern Point that Pitt McGehee's counts for negligence (Count II) and gross negligence (Count III) fail due to the exculpatory clause because they are not premised on allegations of bad faith or reckless indifference.  Reckless indifference constitutes a higher degree of negligence than gross negligence, which is defined as a "heedless and palpable violation of legal duty respecting the rights of others [that] amounts to the absence of slight diligence, or the want of even scant care."  *Commonwealth v. Giddens*, 295 Va. 607, 613 (2018).  Because the negligence and gross negligence claims fail as a matter of law based on the exculpatory clause, the court erred by not sustaining the demurrers to Count II and Count III.

The counts for breach of fiduciary duty (Count I) and liability under the VUTC (Count VI), however, do not fail because they are premised on sufficient allegations of bad faith or reckless indifference.  Pitt McGehee alleged that Eastern Point: had "no commercially reasonable security procedures in place to detect and prevent fraud, including multi-factor authentication;" required distribution requests via unencrypted email without further authentication; failed to verify whether the beneficiaries listed on distribution requests actually owned the destination bank accounts; and knew of suspicious transactions before discovering the fraud but failed to notify Pitt McGehee.[4]  These factual allegations of Eastern Point's conduct are incorporated into Pitt McGehee's counts for breach of fiduciary duty and liability under the VUTC.

_____

[4] Pitt McGehee also alleged that, after the theft, Eastern Point advertised that it would implement multi-factor authentication and thereby acknowledged its prior failure.  However, we decline to rely on this allegation to assess whether Pitt McGehee stated any viable claims of liability because it would not be able to present evidence of these subsequent remedial measures at trial to prove culpable conduct.  *See* Code § 8.01-418.1; Va. R. Evid. 2:407; *Davenport v. Util. Trailer Mfg. Co.*, 74 Va. App. 181, 207 (2022).

- 13 -

Eastern Point's alleged insistence on unencrypted emails for distribution requests, its failure to verify beneficiaries' bank accounts, and its knowledge of suspicious transactions suggest intentional wrongdoing or a reckless disregard for the rights of others. *See Kaltman*, 281 Va. at 494. Further, Eastern Point's alleged failure to implement commercially reasonable security measures, despite holding itself out as an expert in the field of QSF management, suggests a reckless indifference to the foreseeable consequence of losing settlement funds in a security breach. *See id. See also Baidu, Inc. v. Register.com, Inc.*, 760 F. Supp. 2d 312, 318-19 (S.D.N.Y. 2010) (denying motion to dismiss recklessness claim where technology company's lack of security protocols allegedly resulted in cyber-attack).

Eastern Point contends that the documents for which oyer was granted, and which were thus made part of the complaint, defeat Pitt McGehee's claims on demurrer. For example, Eastern Point points to the trust agreement where Pitt McGehee purportedly declined additional security offerings—specifically, the appointment of a supervising third party—by intentionally leaving the option blank, marking the page with "ILB." Additionally, in the Terms of Use, Pitt McGehee purportedly agreed to the terms of "Electronic Transmittal of Information," which advised that information sent by email was not "necessarily secure." According to Eastern Point, these documents attached to the complaint foreclose any claim of gross negligence, bad faith, and reckless indifference, as these documents show Pitt McGehee's consent to Eastern Point's security measures. But the meaning and significance of these documents are disputed facts that must be resolved in Pitt McGehee's favor at this stage. *See Fun*, 245 Va. at 253 (rejecting on demurrer the defendant's "view of the facts" and interpretation of an exhibit to the complaint). On demurrer, a plaintiff's well-pleaded facts are taken as true, and Eastern Point's characterization of these documents assumes the truth of its own defensive allegations. *See Smith v. Chesterfield Meadows Shopping Ctr. Assocs., L.P.*, 259 Va. 82, 84-85 (2000) (reversing a

demurrer where court relied on defendant's characterization of a document attached to the complaint).

Eastern Point's appellate brief contains other factual assertions that ignore the demurrer standard. Eastern Point disputes fault by suggesting that the fraud originated in Pitt McGehee's own email system and that Pitt McGehee had consented to use its own email servers as part of the parties' "agreed-upon security procedure." These are contested facts, not findings by any court. Instead, on demurrer, like the circuit court we are required to accept as true Pitt McGehee's allegation that "an unknown third party began to send fraudulent emails to [Eastern Point] impersonating an employee of [Pitt McGehee] in an attempt to induce [Eastern Point] to make distributions from the QSF." By asserting fault by Pitt McGehee, Eastern Point created an issue for trial, not for demurrer. Similarly, Eastern Point has asserted that the fraud was "[u]nbeknownst to Eastern Point," which contradicts Pitt McGehee's allegation that a series of suspicious transactions did put or should have put Eastern Point on notice of the fraud. Again, a demurrant cannot succeed by merely contradicting allegations in a complaint. *See Smith*, 259 Va. at 84-85; *Fun*, 245 Va. at 253.

Pitt McGehee at least raised a jury question as to whether Eastern Point committed breaches of trust in bad faith or with reckless indifference. *See Koffman*, 265 Va. at 15. To the extent these allegations are incorporated into Pitt McGehee's remaining counts for breach of fiduciary duty and liability under the VUTC, we affirm the court's decision to overrule the demurrer as to those counts.[5]

---

[5] We do not reach whether Article 4A of the UCC preempts Pitt McGehee's common-law counts, an issue Eastern Point has not raised and one outside the single assignment of error presented in this interlocutory appeal.

CONCLUSION

For these reasons, we affirm in part and reverse in part. We affirm that Pitt McGehee stated claims for breach of fiduciary duty and VUTC liability; Code § 64.2-799(A)(1) prohibited Eastern Point from exculpating itself from these claims for "breach of trust committed in bad faith or with reckless indifference." We also affirm that Pitt McGehee stated a claim for UCC liability, as Code § 8.4A-204(b) prevented Eastern Point from relieving itself by agreement of its refund obligation in Code § 8.4A-204(a). We reverse, however, as to Pitt McGehee's claims for negligence and gross negligence; Code § 64.2-799(A)(1) did not prohibit Eastern Point from exculpating itself against these claims. We remand for further proceedings consistent with this opinion.

*Affirmed in part, reversed in part, and remanded.*